UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

VELMA S. BUNKLEY-CLAYBROOKS,

                        Plaintiff,           07 Civ. 7727 (JGK)

        - against -                          MEMORANDUM OPINION
                                             AND ORDER
SHELLY'S OF NEW YORK and THE FIREMAN
HOSPITALITY GROUP-CAFÉ CONCEPTS,

                        Defendants.
────────────────────────────────────

JOHN G. KOELTL, District Judge:

        The plaintiff, Velma S. Bunkley-Claybrooks, brings this pro

se action alleging food poisoning against the defendants,

Johnmar Inc. d/b/a Shelly's of New York, i/s/h/a Shelly's of New

York c/o the Fireman Hospitality Group-Café Concepts.  The

defendants move for summary judgment pursuant to Federal Rule of

Civil Procedure 56.


                                I


        The standard for granting summary judgment is well

established.  Summary judgment may not be granted unless "the

pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential

Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.

1994).  "[T]he trial court's task at the summary judgment motion
stage of the litigation is carefully limited to discerning
whether there are genuine issues of material fact to be tried,
not to deciding them.  Its duty, in short, is confined at this
point to issue-finding; it does not extend to issue-resolution."
Gallo, 22 F.3d at 1224.  The moving party bears the initial
burden of informing the district court of the basis for its
motion and identifying the matter that it believes demonstrates
the absence of a genuine issue of material fact.  Celotex, 477
U.S. at 323.  The substantive law governing the case will
identify those facts that are material and "only disputes over
facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

Summary judgment is appropriate if it appears that the non-
moving party cannot prove an element that is essential to the
non-moving party's case and on which it will bear the burden of
proof at trial.  See Cleveland v. Policy Mgmt. Sys. Corp., 526
U.S. 795, 805-06 (1999); Celotex, 477 U.S. at 322; Powell v.
Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).  In
determining whether summary judgment is appropriate, a court
must resolve all ambiguities and draw all reasonable inferences
against the moving party.  See Matsushita Elec. Indus. Co. v.

2

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the non-moving party to come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998); Singh v. New York City Off-Track Betting Corp., No. 03 Cv. 5238, 2005 WL 1354038, at *1 (S.D.N.Y. June 8, 2005).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion. See McPherson v. Coombe, 174 F.3d 276, 279 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments

that they suggest'") (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).  In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment.  <u>See</u> <u>McPherson</u>, 174 F.3d at 281; <u>Vital v. Interfaith Med. Ctr.</u>, 168 F.3d 615, 620-21 (2d Cir. 1999).

II

In this case, in accordance with Rule 56.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the defendants served the plaintiff with Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment dated March 24, 2009 ("Notice to Pro Se Litigant").  The Notice advised the plaintiff of the procedures for responding to a motion for summary judgment, including the requirement that the plaintiff submit a response to the defendants' statement pursuant to this District's Local Rule 56.1 and to submit counter-evidence.  The plaintiff was also provided with a copy of Rule 56 of the Federal Rules of Civil Procedure, as well as Local Rules 56.1 and 56.2.

Any allegedly undisputed fact not "specifically controverted" by the opposing party's Rule 56.1 statement "will be deemed to be admitted ."  Local Rule 56.1(c); <u>see also</u> <u>Dunkin' Donuts Inc. v. Barr Donut, LLC</u>, 242 F. Supp. 2d 296,

298-99 (S.D.N.Y. 2003).  Even undisputed facts, however, must be supported by the evidence presented.  See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

The plaintiff's responsive papers are deficient.  In response to the Defendants' Local Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1 Stmt."), the plaintiff merely submitted an "Answer," see Notice in Opposition to Motion for Summary Judgment ("Pl.'s Stmt."), that "ignores a number of defendants' record-based factual assertions and contains conclusory factual allegations with no citations to the record." Sterbenz v. Attina, 205 F. Supp. 2d 65, 68 (E.D.N.Y. 2002). "Where plaintiff has not responded to defendants' factual assertions – all of which are established by documentary evidence and/or the deposition testimony of plaintiff . . . – this Court has deemed those facts uncontroverted."  Id.

Therefore, for the purposes of this motion, the defendants' allegedly undisputed facts that are supported by the record and which the plaintiff has not specifically controverted with admissible evidence in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56.1 will be deemed admitted.

III

The following facts are undisputed unless otherwise
indicated.

The plaintiff and her husband arrived in New York on
September 2, 2004, from Chicago.  (Defs.' 56.1 Stmt. ¶ 1; Defs.'
Ex. A ("Compl.").)  During the first few days of her trip, the
plaintiff ate a variety of foods from a variety of vendors and
restaurants.  On September 2, 2004, the plaintiff consumed a
bagel in the morning in Chicago, pretzels on the airplane, and a
meal in the evening at her hotel, the Rihga Royal JW Marriott
(the "Marriott").  (Defs.' 56.1 Stmt. ¶¶ 2-4; Dep. of Velma S.
Bunkley-Claybrooks, dated October 21, 2008, attached as Defs.'
56.1 Stmt. Ex. C ("Bunkley-Claybrooks Dep.") at 22-24.)  On
September 3, 2004, the plaintiff consumed sausage, eggs,
potatoes, and toast for breakfast at the Marriott, a grilled
chicken sandwich at the U.S. Open Tennis Championships in the
afternoon, and a piece of cheesecake at the Marriott in the
evening.  (Defs.' 56.1 Stmt. ¶¶ 5-7; Compl.; Bunkley-Claybrooks
Dep. 34-35.)  On September 4, 2004, the plaintiff ate
croissants, scrambled eggs, sausage, and potatoes for breakfast
at the Tavern on the Green restaurant, as well as popcorn at a
movie theater in the afternoon.  (Defs.' 56.1 Stmt. ¶¶ 8-9;
Compl.; Bunkley-Claybrooks Dep. 37-39.)

On the evening of September 4, 2004, the plaintiff and her husband had dinner at Shelley's of New York. (Defs.' 56.1 Stmt. ¶ 10; Bunkley-Claybrooks Dep. 41-44.) At dinner, the plaintiff consumed bread, seafood bisque, miso sea bass with asparagus and sautéed jumbo shrimp with lemon butter sauce, and crème brulee. (Defs.' 56.1 Stmt. ¶¶ 11, 15; Bunkley-Claybrooks Dep. 42, 45-46.) Although the plaintiff complained that the fish tasted "sour" and "foul," she ate seventy-five percent of the fish and all of her shrimp and asparagus. (Defs.' 56.1 Stmt. ¶¶ 12-13; Bunkley-Claybrooks Dep. 48-49, 53-54.) The plaintiff informed the waiter and her husband that her dish did not taste right, but she did not tell anyone else at the restaurant that the dish did not taste fresh or properly made. (Defs.' 56.1 Stmt. ¶ 20; Bunkley-Claybrooks Dep. 69.) The plaintiff's husband did not taste her food. (Defs.' 56.1 Stmt. ¶ 14; Bunkley-Claybrooks Dep. 59.) The plaintiff had a crème brulee for dessert and ate all of it. (Defs.' 56.1 Stmt. ¶ 15; Bunkley-Claybrooks Dep. 59.)

After dinner, the plaintiff went upstairs at the restaurant to listen to live jazz music, and shortly afterwards she began to feel lightheaded. (Defs.' 56.1 Stmt. ¶¶ 17-18; Compl.; Bunkley-Claybrooks Dep. 63.) The plaintiff decided she needed some air, and she and her husband left the restaurant and walked

back to the hotel.  (Defs.' 56.1 Stmt. ¶ 18; Bunkley-Claybrooks
Dep. 64-66.)  The plaintiff did not tell anyone at the
restaurant that she was feeling sick, and she did not see anyone
else complaining about the food or showing signs of feeling
sick.  (Defs.' 56.1 Stmt. ¶¶ 19, 24-25; Bunkley-Claybrooks Dep.
68, 252-53.)  Upon returning to her hotel room, the plaintiff
alleges that she began vomiting and complained of not being able
to breathe.  (Bunkley-Claybrooks Dep. 72-74.)  At her husband's
request, the hotel staff called an ambulance, and the plaintiff
was taken to St. Luke's Roosevelt Hospital.  While in the
hospital, the plaintiff's stomach was not pumped, her stomach
contents were not tested, and to her knowledge no samples of her
vomit were taken.  (Defs.' 56.1 Stmt. ¶¶ 21-23; Bunkley-
Claybrooks Dep. 116, 155.)  The plaintiff was placed in
intensive care for six days, and she remained in the hospital
until her discharge on September 25, 2004.  (Bunkley-Claybrooks
Dep. 124, 148.)

                                IV

     The plaintiff alleges that she suffered from severe food
poisoning as a result of dining at Shelley's of New York
restaurant on September 4, 2004.  The defendants move for
summary judgment on two grounds.  First, the defendants argue
that the plaintiff has failed to establish that she sustained

personal injuries due to the defendants' negligent preparation
and service of food that was unfit for consumption.  Second, the
defendants contend that the plaintiff has failed to establish
that the defendants breached the implied warranty of fitness of
food.

    It is undisputed that this Court has jurisdiction over the
New York state law claims based on diversity of citizenship
pursuant to 28 U.S.C. § 1332.  See Affirmations of James J.
Cleary dated August 10, 2009 and August 12, 2009.

    In an action for products liability or negligence under New
York State law based on alleged food poisoning, the plaintiff
must prove both that a defect in defendants' food existed and
that due to this defect the plaintiff was injured.  See
Galumbeck v. E. J. Korvette, Inc., 284 N.Y.S.2d 353, 353 (N.Y.
Civ. Ct. 1967); Pendola v. M. & S. Cafeteria, 133 N.Y.S.2d 799,
800 (N.Y. Civ. Ct. 1954).  The plaintiff may rely on
circumstantial evidence to prove her case, "but the
circumstances must be such as to lead to the logical inference
or conclusion that the food allegedly eaten by the plaintiff was
tainted."  Pendola, 133 N.Y.S.2d at 800.  Evidence is
insufficient to support the plaintiff's case if it only "shows
the illness was produced by one of several possible causes from
any one of which alone it could have just as reasonably and

probably resulted." <u>Singer v. Krasne</u>, 34 N.Y.S.2d 236, 236 (App. Term 1941) (per curiam).

The plaintiff must provide sufficient evidence from which a reasonable jury could conclude that the defendant's allegedly unfit food was the cause of her illness.  In support of her claim, the plaintiff relies upon two medical reports: (i) the medical records from Dr. Leung, her physician in Chicago, which lists the cause of her illness as "food poisoning" (Pl.'s Stmt. Ex. A) and (ii) the ambulance report which identifies her "presumptive diagnosis" as "food poisoning" (Pl.'s Stmt. Ex. B). The plaintiff, however, has not submitted any affidavits or expert medical findings supporting her claim.  Although the plaintiff argues that the medical records prove that she suffered from food poisoning, the one-page report by Dr. Leung fails to establish that he reviewed any medical records or laboratory reports or performed any tests as a basis for his diagnosis.[1]  The plaintiff herself states that Dr. Leung's diagnosis rests only on the fact that she "had no prior known seafood allergies before or since" her illness.  (Pl.'s Stmt.) Similarly, the ambulance report's "presumptive diagnosis" that she suffered from food poisoning was not based on any testing. Moreover, even if the reports were accurate with respect to the

---

[1] Dr. Leung did not treat the plaintiff until September 28, 2004, the day after she returned to Chicago from New York and over three weeks after she had eaten at the defendants' restaurant.  (Pl.'s Stmt. Ex. A.)

food poisoning diagnosis, neither report indicates the alleged source of the contaminated food.

The plaintiff claims that she would subpoena Dr. Leung and her physician from St. Luke's Roosevelt Hospital in New York to testify at trial.  The plaintiff's promise to call additional witnesses, however, does not qualify as admissible evidence to defeat a motion for summary judgment.  Although some leniency should be given to a pro se plaintiff, the defendants advised the plaintiff that her response must include sworn affidavits and other acceptable papers as required by Federal Rules of Civil Procedure 56(e) and Local Civil Rule 56.1.  (See Notice to Pro Se Litigant.)  Moreover, there is no basis in the record to find that Dr. Leung, who examined the plaintiff over three weeks after the onset of the illness, or the doctor or ambulance personnel who initially treated her, reached any conclusion as to the source of the alleged food poisoning.

If laboratory studies of the plaintiff's vomit or stomach contents are not available, then the proof must raise other questions of fact, such as that "someone or others in the same party ate the same solids and became ill, or that a complaint was made to the defendant restaurant or to the Board of Health with perhaps an examination by said Board of the food allegedly eaten."  Pendola, 133 N.Y.S.2d at 801.  In this case, there is no evidence that the Board of Health or the restaurant examined

the food for possible taint.  Similarly, no evidence suggests
that other patrons at the restaurant also became ill that night
after consuming the defendants' food.

The incubation period for food poisoning can be up to
forty-eight hours.  See id.  It is mere speculation, therefore,
to attribute the plaintiff's symptoms to her consumption of
unwholesome or contaminated food at the defendants' restaurant,
where it is undisputed that the plaintiff had eaten other foods
in the previous forty-eight hours and where there is no medical
evidence as to the cause of her symptoms.  See Williams v. White
Castle Sys., Inc., 772 N.Y.S.2d 35, 36 (App. Div. 2004); Valenti
v. Great Atl. & Pac. Tea Co., 615 N.Y.S.2d 84, 85 (App. Div.
1994) ("The mere fact that the plaintiff became nauseous about
one-half hour after consuming some of the [allegedly
contaminated food] is insufficient to withstand the defendants'
motion for summary judgment."); Pendola, 133 N.Y.S.2d at 799.
When there are several possible causes of the injury, the
plaintiff "cannot recover without proving that the injury was
sustained wholly or in part by a cause for which defendant was
responsible." Blackman v. Lundy, 87 N.Y.S.2d 181, 182 (N.Y.
City Ct. 1948) (quoting Stubbs v. City of Rochester, 124 N.E.
137, 140 (N.Y. 1919)).

Despite her statements that the fish "didn't smell right"
and that it tasted "foul," the plaintiff fails to offer any non-

speculative evidence that the food from the defendants'
restaurant was the cause of her illness. Consequently, the
plaintiff has failed to prove either that the defendants were
negligent in the preparation and service of food or that the
defendants breached the implied warranty of fitness of food.

CONCLUSION

For all of the reasons set forth above, the defendants'
motion for summary judgment is **granted**. The Clerk is directed
to enter judgment dismissing the complaint and closing this
case.

SO ORDERED.

Dated:     New York, New York
           August 14, 2009

                                    John G. Koeltl
                              United States District Judge

13